## H. T. DUNCAN, JR., v. SAMUEL L. WILLIAMS.

**Vendor and Purchaser—Parol Contract—Performance.**

. A parol contract to take and pay for a part of a tract of land to be sold by a decree of court is binding on the parties when one of them has performed his part of the contract by bidding in the land at the sale.

**Pleadings—Failure to Deny Allegations of Petition.**

Every material allegation of the petition not specifically controverted by the answer must for the purpose of the action be taken as true.

APPEAL FROM NICHOLAS CIRCUIT COURT.

September 21, 1872.

OPINION BY JUDGE PRYOR:

By the terms of the contract made between J. B. Bowman, H. T. Duncan and R. L. Williams as agent for his father, dated the 17th of September, 1864, and executed prior to the purchase of the Williams land by Bowman, the appellant expressly agreed to pay the claim of General Williams, the appellee. The consideration for this undertaking was that in the purchase thereafter, to be made by the parties of the land, the appellant was to have and hold in his own right certain sections of the land more valuable than those to be taken by Bowman. The contract recites that said Bowman and

Duncan, wishing to purchase the land, and R. L. Williams, wishing to purchase it, to secure the interest of his father, General Samuel Williams, it is therefore mutually agreed, etc. Then follows the agreement on the part of the appellant to pay this claim now in controversy. This liability of the appellee on account of his son, John S. Williams, is the only claim alluded to by the witnesses, and in ascertaining the intent and meaning of the contract referred to, no other conclusion can be arrived at, from the writing itself and the testimony connected with it, than the appellant agreed to pay this judgment of Holloway and thereby release the appellee from any liability therefor. It is insisted, however, that the contract was rescinded by the consent of all the parties the evening before Bowman's purchase. It seems that an attorney advised the parties that such a contract as they had made with reference to the bidding and purchase of the property would invalidate the sale and for that reason alone the parties agreed that the contract should be annulled but with the mutual understanding, as the testimony shows, that after the purchase by Bowman its terms were to be complied with, in other words, the parties were only endeavorng to avoid the effect htat such a contract might have upon the sale. Bowman, after his purchase of the land, executed the contract so far as he was obligated to the very letter, by surrendering to the appellant all the land he was entitled to by the terms of that instrument, or the parol agreement, made after the alleged rescission of the written contract.

Bowman's testimony is, that the contract was cancelled by the advice of an attorney and that the arrangement then agreed upon was: "That he, Bowman, was to purchase all the land and that Duncan was to purchase a portion of them subsequently to the sale. It was also understood that Duncan was to pay off the liability of General Williams as surety of John S. Williams on the guardian's bond estimated to be about $10,000.

This is all that the witness Bowman knows of the agreement. This statement of Bowman is of itself conclusive of the rights of the parties to this controversy. The appellants not only get the same land that he was to get by the terms of the written contract, but proceeds to pay off the Holloway judgment. He may have regarded this payment as a purchase of the judgment from Holloway, but the facts appearing in the record sustains no such view of the case. If the appellant purchased the judgment of Holloway and there was no contract binding the appellant to pay it, we can not well see

how it was to become entitled to the claims in Clark garnisheed by the appellee for the purpose of indemnifying him as the surety of his son. These claims the appellant collected and applied to the payment of the Holloway judgment reducing it to a title upwards of seven thousand dollars. The testimony in the case conduces to show that the appellant was entitled to these claims ,although the written contract makes no allusion to them whatever, and the parol agreement proven by Bowman is equally as silent upon the subject.

The written agreement and the parol agreement proven by Bowman both evidence the fact that the appellant was to discharge this judgment by reason of his obtaining an interest in that Illinois land.

If, however, the written contract was in fact rescinded and the assignment of the Holloway judgment was a purchase by the appellant he fails to show by any proof in this record, how or in what way he had the right to apply the claims garnished in Clark to the payment of the Holloway judgment. In the absence of such an explanatio we must regard ths appropriation of the monies as confirmatory of the contract relied on by appellee. The appellant in July, 1865, in a letter to the appellee on the subject asks the appellee to send him a copy of the agreement made between Bowman, your son, and myself, so that I can be in position to settle with Houston. This letter expressly recognizes the existence of the agreement relied on by the appellee and is sought to be made by the appellant the foundation of a settlement with Houston's attorney for the appellee of the matters in controversy. In a conversation had by the appellat with the attorney, Houston, he (appellant) admitted that he was to apy off this Holloway judgment and only insisted upon his right to the claims garnisheed in Clark. Whilst we are inclined to the opinion that the appellant may have believed that he had the right to be substituted to the rights of General Sam Williams as against his son John S., still the facts upon this record leave no doubt upon the mind of the court but that the appellant was to be entirely exonerated from the payment of the Holloway judgment.

The amended petition, filed by the appellant, alleges "that if the contract was rescinded it was not a bona fide rescission, but made with a view to avoid any illegality in the sale and the parties still agreed to fully carry out said agreement—that the defendant entered into the possession of his land under the agreement and fully acknowledged it verbally and in writing, etc. To this amended petition and the specific allegations therein contained the appellant makes

this answer: "The defendant, for answer to the amended petition, reiterates the statements of his original petition, and denies all the statements of the amended petition at variance with the statements and denials of his original answer." An answer must contain a denial of such allegations of the petition controverted by the defendant or of any knowledge or information thereof sufficient to form a relief." Every material allegation not specifically controverted by the answer must for the purpose of the answer be taken as true. *Corbin v. Commonwealth,* 2 Met. 380.

The defendant, making a statement in his answer to an original petition, that if true, is iconsistent with the allegations of an amended petition afterwards filed, does not dispense with the necessity of answerig specifically the allegations of the amended petition, especially where these allegations are material and not set forth in the original petition, and therefore an answer to such an amended petition "That the defendant denies all the statements therein contained inconsistent with his original answer is no such denial of the allegations of the amended petition as required by the code.

The allegations of the amended petition material to the issue in this case stand undenied, and must be taken as true. The appellee is entitled to the relief asked for upon both the pleadings and proof.

Judgment affirmed.

*Waters, for appellant.*

*J. H. Mulligan and Turner, for appellee.*